## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

ISRAEL EPHRAIM and ZELDA BERGER,
Individually, and as legal guardian of
T.B., a minor child, and ISRAEL EPHRAIM
and ZELDA BERGER on behalf
of all others similarly situated,

        Plaintiffs,                            **CASE No.**

        v.

ABBOTT LABORATORIES, INC.

        Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, Israel Ephraim and Zelda Berger, individually, and as legal guardians of T.B., a minor child, and Israel Ephraim and Zelda Berger, on behalf of all others similarly situated, by and through undersigned counsel, files this Class Action Complaint, and alleges against Defendant, ABBOTT LABORATORIES INC, as follows:

## INTRODUCTION

1. Plaintiffs bring this action both on their own behalf, and as legal guardian of T.B., a minor child, and on behalf of a Class compromised of all others similarly situated to redress Defendant's numerous unfair and deceptive acts and practices designed to mislead the public in connection with their promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac Infant Formula, including but not limited to Similac®, Alimentum® and EleCare® products ("class products" or "said Similac products") which Defendants unfairly and deceptively promoted during the relevant time period as containing ingredients safe for infant consumption and being safe for use, when, in fact, they cause bacterial infections and gastrointestinal illnesses

such as *Cronobacter sakazakii*, *Salmonella*, diarrhea, gastrointestinal illnesses, and other serious health problems.

2.      Similac, owned and made by ABBOTT LABORATORIES INC., tells consumers that "[t]he Promise of Similac… [is] to help keep your baby fed, happy, and healthy"[1] and that Similac brand is "Nutrition you can trust."[2]   But recent testing at one of Abbott Nutrition's manufacturing facilities tells a different story – one of broken promises, mistrust and concealment. After receiving consumer complaints of *Cronobacter sakazakii* and *Salmonella* infections, the FDA's investigation along with the U.S. Centers for Disease Control and Prevention, and state and local partners, confirmed that Abbott Nutrition's Sturgis, Michigan facility had findings to date of "several positive *Cronobacter sakazakii* results from environmental samples taken by the FDA and adverse inspectional observations by the FDA investigators."[3]

3.      Moreover, Politico reported that the FDA first received a report of a foodborne illness suspected to be linked to infant formula in September – four months before issuing the recall of three major brands – after four babies were hospitalized and one died.[4]   The Minnesota Department of Health investigated a case of an infant who was sickened by *Cronobacter sakazakii* in September 2021, the state agency told Politico.[5]   State health officials in Minnesota knew that the infant had consumed powdered formula produced at an Abbott Nutrition facility in Sturgis, Mich., and shared this information with the FDA and CDC in September of 2021.[6]   Inspectors

---

[1] *Similac Home,* Abbott, 2022, https://www.similac.com/home.html (last visited Feb. 20, 2022).
[2] *The Promise of Similac,* Abbott, 2022 https://www.similac.com/why-similac/promise-of-similac.html (last visited Feb. 20, 2022).
[3] *FDA News Release,* Feb. 17, 2022, https://www.fda.gov/news-events/press-announcements/fda-warns-consumers-not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited Feb. 20, 2022).
[4]  FDA learned of suspected infant formula illness four months before recall, February 18, 2022, https://www.politico.com/news/2022/02/18/fda-infant-formula-illness-four-months-before-recall-00010226         (last visited Feb. 20, 2022)
[5] *Id.*
[6] *Id.*

found Cronobacter sakazakii in several environmental samples taken at the plant, *as well as records suggesting the company had been finding the bacteria in the plant and had destroyed product because of the issue*.[7]

4.      Mr. and Mrs. Berger, frequent purchasers of Similac Infant Formula, specifically Alimentum, for their infant daughter's daily consumption, had been unaware that Abbott Nutrition's Sturgis, Michigan facility had findings of positive *Cronobacter sakazakii* results in several environmental samples taken at the plant and the likely contamination of Abbott's Similac Infant Formula.  Had Plaintiffs known of the contamination, they would never have purchased the said products and never would have fed the said formula to their infant daughter.  Plaintiffs seek class-wide redress.

## **PARTIES, JURISDICTION AND VENUE**

5.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332, Diversity of Citizenship. Complete diversity of citizenship exists between the Plaintiffs and the Defendant. Damages in this action exceed $75,000.

6.      This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2), which under the provisions of the Class Action Fairness Act ("CAFA") explicitly provides for the original jurisdiction of the Federal Courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interests and costs. Plaintiff alleges that the total claims of individual class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interests and costs, as required by 28 U.S.C. §§ 1332(d)(2).  As set forth below, Plaintiffs are Citizens of Florida, whereas Abbott is a Citizen of Illinois and/or Delaware.

---

[7] *Id.*

7.      Plaintiff Zelda Berger and her husband, Israel Ephraim Berger, reside in Miami Dade County, Florida and are citizens of the State of Florida.  Mr. and Mrs. Berger purchased Similac Infant Formula, including but not limited to Alimentum in the class period.  At all times relevant, Mr. and Mrs. Berger were unaware that these products contained or could contain contaminants, including, but not limited to certain bacteria such as *Salmonella* and *Cronobacter sakazakii*.  Had they known that these products contained or could contain said contaminants, they would not have purchased them.  Mr. and Mrs. Berger, individually, and as legal guardian of T.B., a minor child, incurred losses and damages as a result of the activities alleged herein.

8.      Defendant, Abbott Laboratories, Inc. ("Abbott" or "Defendant") is a Delaware corporation with a principal place of business in Abbott Park, Lake County, Illinois, and registered in Florida as a foreign profit corporation.  Abbott has been and still is engaged in the business of manufacturing, promoting and selling Similac Infant Formula, including but not limited to Similac®, Alimentum® and EleCare® products.  These products are sold throughout Florida and the United States.

9.      The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because a member of the Plaintiff Class is a citizen of the State of Florida, Defendant is a corporation organized and existing under the laws of Delaware with its principal place of business located in Abbott Park, Lake County, Illinois.  For the purposes of diversity jurisdiction, Abbott may be considered a "citizen" of Illinois and/or Delaware. At all times relevant hereto, Abbott was and is doing business within this judicial district, there are currently 100 or more class members, and the aggregate amount in controversy will exceed $5,000,000.00.

10.     The Court has personal jurisdiction over Defendant because it does business in the Southern District of Florida and has sufficient minimum contacts with this District.  Defendant

intentionally avails itself of the markets in this State through the promotion, marketing, and sale of Similac Infant Formula, including but not limited to Similac®, Alimentum® and EleCare® products, to render the exercise of jurisdiction by this Court permissible under Florida law and the U.S. Constitution.

11.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 (b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## GENERAL FACTUAL ALLEGATIONS

12.     Plaintiffs repeat, reiterate, and reallege, each and every allegation contained in this complaint with the same force and effect as if fully set forth herein.

13.     Abbott Laboratories Inc., manufactures, labels, markets, and sells infant formula under the Similac, Alimentum and EleCare brands.

14.     On February 17, 2022, the U.S. Food and Drug Administration ("FDA") announced it was investigating consumer complaints of *Salmonella* and *Cronobacter sakazakii* infections related to ingestion of Similac, Alimentum and EleCare.

15.     Specifically, the FDA announced it was: "investigating consumer complaints of Cronobacter *sakazakii* and Salmonella Newport infections. All of the cases are reported to have consumed powdered infant formula produced from Abbott Nutrition's Sturgis, Michigan facility. As a result of the ongoing investigation, along with the U.S. Centers for Disease Control and Prevention and state and local partners, the FDA is alerting consumers to avoid purchasing or using certain powdered infant formula products produced at this facility. This is an ongoing

investigation, and the firm is working with the FDA to initiate a voluntary recall of the potentially affected product."[8]

16.     The FDA news release further advised consumers should "not use Similac, Alimentum, or EleCare powdered infant formulas if (a) the first two digits of the code are 22 through 37; and (b) the code on the container contains K8, SH or Z2; and (c) the expiration date is 4-1-2022 (APR 2022) or later."[9]

17.     The FDA news release also advised it was "investigating complaints of four infant illnesses from three states. All four cases related to these complaints were hospitalized and *Cronobacter* may have contributed to a death in one case. The FDA has initiated an onsite inspection at the facility. Findings to date include several positive *Cronobacter sakazakii* results from environmental samples taken by the FDA and adverse inspectional observations by the FDA investigators. A review of the firm's internal records also indicate environmental contamination with *Cronobacter sakazakii* and the firm's destruction of product due to the presence of *Cronobacter*."[10]

18.     Frank Yiannas, FDA Deputy Commissioner for Food Policy and Response, expressed concern over the infant food contamination:

> **"As this is a product used as the sole source of nutrition for many of our nation's newborns and infants, the FDA is deeply concerned about these reports of bacterial infections"[11]**

19.     According to the FDA, *Cronobacter* bacteria can cause severe, life-threatening infections (sepsis) or meningitis (an inflammation of the membranes that protect the brain and

---

[8] *FDA News Release*, Feb. 17, 2022, https://www.fda.gov/news-events/press-announcements/fda-warns-consumers-not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited Feb. 20, 2022).
[9] *Id*.
[10] *Id*.
[11] *Id*.

spine). Symptoms of sepsis and meningitis may include poor feeding, irritability, temperature changes, jaundice (yellow skin and whites of the eyes), grunting breaths and abnormal movements. Cronobacter infection may also cause bowel damage and may spread through the blood to other parts of the body.[12] Further, according to the CDC, *Cronobacter* infections are often very serious for babies and can result in death.[13]

20. According to the FDA, Salmonella are a group of bacteria that can cause gastrointestinal illness and fever called salmonellosis. Most people with salmonellosis develop diarrhea, fever and abdominal cramps. More severe cases of salmonellosis may include a high fever, aches, headaches, lethargy, a rash, blood in the urine or stool, and in some cases, may become fatal.[14]

21. On or about October 2021, Plaintiffs Mr. and Mrs. Berger purchased Alimentum for their infant daughter.

22. Upon and information and belief, at least one of the infant formula containers purchased by Plaintiffs had lot numbers matching the tainted lots identified by the FDA news advisory.

23. Infant, T.B. consumed the tainted infant formula.

24. On or about November 3, 2021, as a result of Infant T.B.'s consumption of the tainted Alimentum manufactured by Defendant, she was diagnosed with Salmonella and developed severe gastrointestinal illness and symptoms including, but not limited to, overwhelming diarrhea multiple times per day, abdominal pain, constant temperature changes, severe diaper rash with blood, loss of blood, bloody stool, and sleeplessness.

---

[12] *Id.*
[13] *CDC Cronobacter*, 2022, https://www.cdc.gov/cronobacter/index.html (last visited on February 20, 2022)
[14] *FDA News Release*, Feb. 17, 2022, https://www.fda.gov/news-events/press-announcements/fda-warns-consumers-not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited Feb. 20, 2022).

25.     Moreover, Infant, T.B. became anemic, iron deficient and had to be treated with antibiotic while undergoing painful medicinal injections as a result of her condition.

26.     Infant T.B.'s illness was a direct result of her consumption of the tainted Alimentum.

27.     To date, Infant T.B continues to suffer gastrointestinal and bowel problems as well as other pains and injuries.

28.     As a direct and proximate result of Infant T.B.'s ingestion of the contaminated infant formula, Plaintiffs have suffered injuries in the past that will continue in the future.

## CLASS REPRESENTATION ALLEGATIONS

29.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves, a Nationwide Class and a Florida Class of similarly situated individuals.  The proposed classes are defined as follows:

> All persons who purchased, in the United States, Similac powdered Infant Formula, including Similac®, Alimentum® and EleCare® products, produced from Abbott Nutrition's Sturgis, Michigan facility, and which contain the following information: (a) the first two digits of the code are 22 through 37; and (b) the code on the container contains K8, SH or Z2; and (c) the expiration date is 4-1-2022 (APR 2022) or later.

> All residents of Florida who purchased Similac powdered Infant Formula, including Similac®, Alimentum® and EleCare® products, produced from Abbott Nutrition's Sturgis, Michigan facility, and which contain the following information: (a) the first two digits of the code are 22 through 37; and (b) the code on the container contains K8, SH or Z2; and (c) the expiration date is 4-1-2022 (APR 2022) or later.

> All persons who purchased, in the United States, Similac powdered Infant Formula, including Similac®, Alimentum® and EleCare® products, produced from Abbott Nutrition's Sturgis, Michigan facility, and which contain the following information: (a) the first two digits of the code are 22 through 37; and (b) the code on the container contains K8, SH or Z2; and (c) the expiration date is 4-1-2022 (APR 2022) or later; and as a result,

suffered personal injuries or infections, including, but not limited to, *Cronobacter sakazakii*, *Salmonella*, bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

All residents of Florida who purchased Similac powdered Infant Formula, including Similac®, Alimentum® and EleCare® products, produced from Abbott Nutrition's Sturgis, Michigan facility, and which contain the following information: (a) the first two digits of the code are 22 through 37; and (b) the code on the container contains K8, SH or Z2; and (c) the expiration date is 4-1-2022 (APR 2022) or later; and as a result, suffered personal injuries or infections, including, but not limited to, *Cronobacter sakazakii*, *Salmonella*, bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

30.     Plaintiffs reserve the right to propose subclasses or modify the above class definitions, based on the evidence adduced in discovery, or as necessary and appropriate.

31.     The Nationwide Class, the Florida Class, and their members are sometimes referred to as "Class" or "Classes."

32.     Excluded from the Class are: Defendant; any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant; Defendant's legal representatives, assignees, and successors; the Judge to whom this case is assigned and any member of the Judge's immediate family.

33.     This action has been brought and may properly be maintained as a class action against the Defendant pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable.

34.     Numerosity: Plaintiffs do not know the exact size of the Classes but they are each composed of more than 500 persons.  The persons in the Classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

35.     Commonality: There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

a.  Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and/or sale of said Similac products;

b.  Whether Defendants intentionally or negligently made misrepresentations in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of said Similac products;

c.  Whether Defendants Failed to use reasonable care in formulating, designing and manufacturing said Similac products so as to ensure that they were safe for use and did not cause adverse health effects including, but not limited to *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses;

d.  Whether Defendants Failed to conduct adequate safety testing of said Similac products and the ingredients used to make said Similac products; and

e.  Whether Defendants Failed to accompany said Similac products with proper warnings regarding the possible adverse health effects associated with its use including, but not limited to, *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses

f.  Whether Defendants breached express warranties in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac products;

g.  Whether Defendants breached implied warranties in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of said Similac products;

h.  Whether Defendant failed to adequately warn the Plaintiffs and the Class of the health danger and/or hazard with respect to the tainted infant formula;

i.  Whether Defendants' practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of said Similac products unjustly enriched Defendants at the expense of, and to the detriment of, Plaintiffs and other Class members;

j.  Whether Defendants' conduct as set forth above injured consumers and if so, the extent of the injury.

36.    Typicality: Plaintiffs' claims are typical of the claims of the class. Plaintiffs and class members were injured through Defendants' substantially uniform misconduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and class members, and there are no defenses that are unique to Plaintiffs' claims. Plaintiffs' and class members' claims are from the same set of operative facts and are based on the same legal theories.

37.    Adequacy: Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained competent and capable attorneys experienced in complex and class action litigation, including consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the class and have the financial resourced to do so. Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with the Class.

38.     Predominance: The common issues that comprise the basis for this lawsuit predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

39.     Superiority:  A class action is superior to other available methods for the fair and efficient adjudication of the controversy for at least the following reasons:

a.  Absent a class action, class members as a practical matter will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional consumers will be harmed, and Defendant will continue to retain its ill-gotten gains;

b.  It would be a substantial hardship for most individual class members if they were forced to prosecute individual actions;

c.  Once Defendant's liability has been adjudicated, the Court will be able to determine the claims of all Class members;

d.  A class action will permit an orderly and expeditious administration of the claims, foster economies of time, effort and expense, and ensure uniformity of decisions;

e.  The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

f.  Defendant has acted on grounds generally applicable to class members, making class-wide relief appropriate.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of all Classes)

40.     Plaintiffs incorporate by reference paragraphs 1-39 above as if fully set forth herein and further declare:

41.     Defendants formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold Similac products to consumers.

42.     The use of Similac products containing contaminants, including, but not limited to *Cronobacter sakazakii* and *Salmonella*, among other contaminants, causes serious infections and illnesses including, but not limited to *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

43.     Defendants have a duty to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Similac products, including a duty to ensure that Similac products are safe for use and a duty to warn that Similac products may cause *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

44.     As set forth in detail above, Defendants failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Similac products by failing to ensure that Similac products were safe for use.

45.     Specifically, Defendants were negligent in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Similac products in that they, among other things:

(a) Failed to use reasonable care in formulating, designing and manufacturing Similac products so as to ensure that they were safe for use and did not cause adverse health effects including, but not limited to *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses;

(b) Failed to conduct adequate safety testing of Similac products and the ingredients used to make Similac products; and

(c) Failed to accompany Similac products with proper warnings regarding the possible adverse health effects associated with its use including, but not limited to, *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

46. That Defendant breached the abovementioned duties to Plaintiffs and members of the Class.

47. That Defendant's breach of the abovementioned duties was the actual and proximate cause of Plaintiffs and members of the Class injuries.

48. Despite the fact the Defendants knew or should have known that its Similac products could cause serious adverse health effects, it continued to market and sell them to consumers, including Plaintiffs and members of the Class, despite the reasonable possibility that said Similac products caused *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

49. Defendants knew or should have known that Plaintiffs and members of the Class would foreseeably be put at risk of *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses to infant children as a result of Defendant's failure to give warning of the adverse health effects associated with use of said Similac products.

50. Defendant's negligence proximately caused Plaintiffs and the Class to be injured, including, but not limited to the following health related injuries, significant exposure to toxic substances, *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that they would not have purchased said contaminated Similac products if they had known the true facts.

51. Further, as a direct and proximate result of Defendant ABBOTT LABORATORIES, INC.'s negligence, Plaintiff ISRAEL EPHRAIM and ZELDA BERGER, Individually, and as legal guardian of T.B., a minor child, and all class members suffered significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs and class members will suffer the injuries and impairment in the future, and economic harm in that they would not have purchased said contaminated Similac products if they had known the true facts.

## SECOND CAUSE OF ACTION
### Strict Product Liability
### (On Behalf of All Classes)

52. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

53.     Defendants formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare products, or have partnered to formulate, design, manufacture, promote, market, advertise, package, label, distribute and/or sell said Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare products.

54.     At all times relevant, Defendants knew or should have known that said Similac products contained a non-obvious danger in their ingredients, as well as of the dangers of contaminated infant formula as described in this Complaint.

55.     The Similac products that Defendant formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold were defective in their formulation, design and/or manufacturing. Further, the Similac products were defective when they left control of the Defendant such that: (1) the foreseeable risks of *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses posed by said contaminated Similac products exceeded the benefits associated with the formulation, design and manufacturing of Similac products, or (2) said Similac products were unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other similar products.

56.     Defendant knew that Plaintiffs and other members of the Class would use Similac products without expecting to be put at risk of *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses to infant children. However, Defendants failed to warn Plaintiffs and other members of the Class as to the potential adverse health effects that using said contaminated Similac products could have.

57.    Said Similac products were expected to and did reach Plaintiffs and other members of the Class without substantial change in condition.

58.    The said Similac products Defendants formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold were defective due to inadequate formulation, design, manufacture, safety testing and inadequate warning of the Similac products' true nature.

59.    Had Plaintiffs and members of the Class been warned about the contaminated Similac products and the risk of *Cronobacter sakazakii*, *Salmonella*, bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses to infant children, as a result of the use of Similac products and/or the danger that they posed, they would not have purchased, acquired or used Similac products.

60.    Plaintiffs and class members were harmed directly and proximately by Defendants' failure to warn and defectively designed Similac infant formula products.  Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease; *Cronobacter sakazakii*, *Salmonella*, bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that they would not have purchased said contaminated Similac products if they had known the true facts.

61.    Further, Plaintiff ISRAEL EPHRAIM and ZELDA BERGER, Individually, and as legal guardian of T.B., a minor child, and all class members were harmed directly and proximately by Defendants' defectively designed Similac products and their failure to warn.  Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish,

loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs and class members will suffer the injuries and impairment in the future, and economic harm in that they would not have purchased said contaminated Similac products if they had known the true facts.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of All Classes)**

62.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

63.     Defendants provided Plaintiffs and other members of the class with written express warranties by promotion and other means that said Similac products were safe for use and promised to give babies a strong start by helping to keep them fed, happy and healthy.

64.     Defendants breached these warranties in violations of applicable law, by manufacturing, promoting, marketing, advertising, distributing and/or selling contaminated Similac Infant Formula which resulted in damages to Plaintiffs and other members of the Class.

65.     Plaintiffs and Class members purchased said Similac Infant Formula products unaware that they contained contaminants.

66.     But for Defendant's breach of warranty, Plaintiffs and the Class would not have purchased said Similac Infant Formula products.

67.     Plaintiffs further assert claims under all other applicable state laws governing express warranties.

68.     As a proximate result of this breach of warranty by Defendants, Plaintiffs and Class members have suffered economic and non-economic damages in an amount to be determined at trial.

69.     Plaintiffs and class members were harmed directly and proximately by Defendant's breach of express warranty.  Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease; *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that they would not have purchased said contaminated Similac products if they had known the true facts.

70.     Further, Plaintiff ISRAEL EPHRAIM and ZELDA BERGER, Individually, and as legal guardian of T.B., a minor child, and all class members were harmed directly and proximately by Defendant's breach of express warranty of said Similac products.  Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs and class members will suffer the injuries and impairment in

the future, and economic harm in that they would not have purchased said contaminated Similac products if they had known the true facts.

## FOURTH CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability**
**(On Behalf of All Classes)**

71.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

72.     As alleged above, Defendant warranted that said Similac products were safe for use and promised to give babies a strong start by helping to keep them fed, happy and healthy.

73.     Thus, Defendant warranted that said Similac products were reasonably fit for the intended use for infant consumption.

74.     Because said Similac products described above contained contaminants, they are not reasonably fit for the uses intended or reasonably foreseeable.

75.     Plaintiffs and Class members purchased said Similac products unaware that they contained contaminants.

76.     But for Defendant's breach of warranty, Plaintiffs and the Class would not have purchased said Similac products.

77.     As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and the Class suffered injury in fact and actual damages.

78.     As a proximate result of this breach of warranty by Defendants, Plaintiffs and Class members have suffered economic and non-economic damages in an amount to be determined at trial.

79.     Plaintiffs and class members were harmed directly and proximately by Defendant's breach of warranty.  Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease; *Cronobacter sakazakii*, *Salmonella,* bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses and other related injuries, as well as the associated costs of diagnostic screening and medical monitoring, and economic harm in that they would not have purchased said contaminated Similac products if they had known the true facts.

80.     Further, Plaintiff ISRAEL EPHRAIM and ZELDA BERGER, Individually, and as legal guardian of T.B., a minor child, and all class members were harmed directly and proximately by Defendant's breach of warranty of said Similac products.  Such harm includes significant exposure to toxic substances, which may cause or contribute to causing disease, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, experienced in the past and to be experienced in the future, expense of hospitalization and medical care experienced in the past and to be experienced in the future, medical and nursing care and treatment experienced in the past and to be experienced in the future, loss of earnings, loss of ability to earn money in the future, which losses are permanent and continuing in nature and Plaintiffs and class members will suffer the injuries and impairment in the future, and economic harm in that they would not have purchased said contaminated Similac products if they had known the true facts.

**FIFTH CAUSE OF ACTION**
**Breach of Implied Warranty under the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301 *et seq*.**
**(On Behalf of all Classes)**

81.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

82.     Plaintiffs and Class members bring this cause of action against Defendant.

83.     The Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare products are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

84.     Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

85.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5). Defendant impliedly warranted that the Class Similac Infant Formula, including the Similac, Alimentum and EleCare products were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the said Similac products were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for infant consumption; and (ii) a warranty that the Class Similac products would be fit for its intended use.

86.      Contrary to the applicable implied warranties, the said Similac products at the time of sale and thereafter were not fit for their ordinary and intended purpose of infant consumption. Instead, the class Similac products are defective, contain contaminants and not safe for infant consumption.

87.     Defendant's breach of implied warranty has deprived Plaintiffs and Class Members of the benefit of their bargain.

88.     The amount in controversy of Plaintiffs' and class members individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

89.     The alleged Similac infant formula product defects was inherent in each Class Similac product and was present in each Class Similac product at the time of sale.

90.     As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiffs and Class Members sustained both economic and non-economic damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, punitive damages, consequential damages, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

91.      As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of all Classes)

92.     Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

93.     As a result of Defendant's unlawful conduct described above, Defendant was enriched at the expense of Plaintiffs and the Class.

94.     Defendants have benefited from their unlawful acts by receiving excessive revenue derived from the sales of said Similac products represented as being safe for use. Defendants appreciated and/or knew the benefit of the receipt of such excessive revenue. This excessive revenue has been received by Defendants at the expense of Plaintiffs and other members of the

Class, under circumstances in which it would be inequitable for Defendants to be permitted to retain the benefit.

95.     Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class for monies paid to Defendant for the sale of Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare products.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, individually and as legal guardian of T.B., a minor child, and on behalf of all Class members, seeks the following relief against Defendant:

A.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, and finding Plaintiff is an adequate representative of the Class;

B.     An order awarding Plaintiffs and the proposed Class members damages, and punitive damages in the amount to be determined at trial;

C.     An order awarding restitution and disgorgement of Defendant's revenues from the products to Plaintiffs and the proposed Class members;

D.     An order awarding attorneys' fees and costs to Plaintiff;

E.     An order awarding declaratory relief and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

F.     An order providing for all other such relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: February 20, 2022                         Respectfully submitted

                                              s/ Scott P. Schlesinger____
                                              Scott P. Schlesinger
                                              Fl. Bar No. 444952
                                              Jonathan R. Gdanski
                                              Fl. Bar No. 0032097
                                              David Silverman
                                              Fl. Bar No. 119389
                                              Jeffrey L. Haberman
                                              Fl. Bar No. 98522

                                              **SCHLESINGER LAW OFFICES, P.A.**
                                              Attorneys for Plaintiffs
                                              1212 Southeast 3rd Avenue
                                              Fort Lauderdale, Florida  33316
                                              Telephone: (954) 320-9507
                                              SLOPA.Service@Schlesingerlaw.com
                                              scott@schlesingerlaw.com
                                              jonathan@Schlesingerlawoffices.com
                                              dsilverman@schlesingerlaw.com
                                              jhaberman@schlesingerlaw.com